1

2

3          **UNITED STATES DISTRICT COURT**

4          **EASTERN DISTRICT OF WASHINGTON**

5  CONCEPCION GONZALES,                    | No. 1:14-cv-03180-MKD

6                    Plaintiff,             | ORDER GRANTING PLAINTIFF'S
                                            | MOTION FOR SUMMARY
7        vs.                                | JUDGMENT AND DENYING
                                            | DEFENDANT'S MOTION FOR
8  COMMISSIONER OF SOCIAL                   | SUMMARY JUDGMENT
   SECURITY,
9                                           | ECF Nos. 21, 32
                    Defendant.
10

11        BEFORE THE COURT are the parties' cross-motions for summary

12  judgment.  ECF Nos. 21, 32.  The parties consented to proceed before a magistrate

13  judge.  ECF No. 4.  The Court, having reviewed the administrative record and the

14  parties' briefing, is fully informed.  For the reasons discussed below, the Court

15  grants Plaintiff's motion (ECF Nos. 21, 23, 25)[1] and denies Defendant's motion

16  (ECF No. 32).

17  _____

18  [1] Plaintiff filed an initial motion for summary judgment, ECF No. 21, and

19  subsequently filed revised briefs making corrections.  ECF Nos. 23, 25.  The Court

20  cites to the final brief (ECF No. 25) in this Order.

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3      If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10  not disabled.  20 C.F.R. § 416.920(c).

11      At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 416.920(d).

17      If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

1   activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2   416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3          At step four, the Commissioner considers whether, in view of the claimant's

4   RFC, the claimant is capable of performing work that he or she has performed in

5   the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

6   capable of performing past relevant work, the Commissioner must find that the

7   claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

8   performing such work, the analysis proceeds to step five.

9          At step five, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing other work in the national economy.

11  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

12  must also consider vocational factors such as the claimant's age, education and

13  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

14  adjusting to other work, the Commissioner must find that the claimant is not

15  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

16  other work, analysis concludes with a finding that the claimant is disabled and is

17  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

18         The claimant bears the burden of proof at steps one through four above.

19  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  **ALJ'S FINDINGS**

5  Plaintiff applied for supplemental security income benefits on July 1, 2011,

6  alleging a disability onset date of December 1, 2009.  Tr. 167-72.  The application

7  was denied initially, Tr. 102-05, and on reconsideration, Tr. 106-14.  Plaintiff

8  appeared at a hearing before an Administrative Law Judge (ALJ) on January 16,

9  2013.  Tr. 36-72.  On March 22, 2014, the ALJ denied Plaintiff's claim.  Tr. 19-28.

10  At step one, the ALJ found that Plaintiff has not engaged in substantial

11  gainful activity since the application date, July 1, 2011.  Tr. 21.  At step two, the

12  ALJ found that Plaintiff has the following severe impairments: degenerative disc

13  disease of the cervical spine; obesity; carpal tunnel syndrome and epicondylitis;

14  depression; and anxiety disorder.  Tr. 21.  At step three, the ALJ found that

15  Plaintiff does not have an impairment or combination of impairments that meets or

16  medically equals a listed impairment.  Tr. 22.  The ALJ then concluded that

17  Plaintiff has the RFC to perform a range of light work with the following

18  qualifications and limitations:

19  [T]he claimant could frequently climb ramps and stairs, occasionally climb
    ladders, ropes, and scaffolds; occasionally crawl; frequently handle, finger,
20  and reach overhead.  She should avoid concentrated exposure to excessive

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

vibration and is limited to simple tasks with only occasional and superficial interaction with the public.

Tr. 23.

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 26. At step five, relying on a vocational expert's testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as product assembler, hand packager, and housekeeper.  Tr. 27.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act. Tr. 27-28.

On September 25, 2014, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 25.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed the medical evidence;

2.  Whether the ALJ properly discounted Plaintiff's symptom claims; and

3.  Whether the Court should remand for further proceedings or payment of benefits.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1 | ECF No. 25 at 5-31.

2 | ## DISCUSSION

3 | ### A.  Medical Opinion Evidence

4 | Plaintiff faults the ALJ for improperly weighing (1) the medical opinions

5 | contained in the mental health treatment records from Central Washington

6 | Comprehensive Mental Health (CWCMH) and Yakima Neighborhood Health

7 | Services (YNHS); and (2) the opinions of examining psychologists Jay Toews,

8 | Ed.D., and Jan Kouzes, Ed.D.  ECF No. 25 at 5-15.[2]

9 | There are three types of physicians: "(1) those who treat the claimant

10 | (treating physicians); (2) those who examine but do not treat the claimant

11 | (examining physicians); and (3) those who neither examine nor treat the claimant

12 | but who review the claimant's file (nonexamining or reviewing physicians)."

13 | *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

14 | "Generally, a treating physician's opinion carries more weight than an examining

15 | physician's, and an examining physician's opinion carries more weight than a

16 | _____

17 | [2] Plaintiff assigns error the ALJ's treatment of other medical evidence.  *See*, *e.g.*,

18 | ECF No. 25 at 5 (Water's Edge Pain Clinic) (Tr. 390-412).  Because the Court

19 | reverses the ALJ's decision, on remand the ALJ should reconsider all of the

20 | medical evidence, including these records.

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical

opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13.  That being said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that the Court may draw reasonable inferences when appropriate).  "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 102 (quoting *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)).

Plaintiff faults the ALJ for "disregarding virtually all of the medical evidence of record," and improperly characterizing treatment records as opinions that are "not entitled to weight."  ECF No. 25 at 5-15 (citing Tr. 25-26).  The ALJ's only cited reasons, that the medical records (which include medical opinions) are repetitious and given by non-acceptable sources, do not suffice. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (An ALJ need only give germane reasons for rejecting "other source" opinion evidence).  Although the ALJ is not required to discuss evidence every piece of evidence, *see Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003), the ALJ is required to consider all of the evidence in an applicant's case record, 20 C.F.R. § 416.920(a)(3), must view the record as a whole, *Reddick*, 157

F.3d at 720, and must consider the consistency of the medical opinions with the record as a whole, assigning more weight to those opinions that are more consistent with the medical evidence of record.  20 C.F.R. § 416.927(d)(4).

Here, the Court finds the ALJ erred in two ways: first, when she weighed the specific medical opinion evidence, and second, when she weighed the more general medical record evidence.  With respect to the medical opinions, some are interspersed in the medical records (mental health treatment records) that the ALJ cursorily rejected with little to no independent analysis.  These were errors that require remand for proper evaluation of the medical opinions and other medical record evidence.

### 1. Mental Health Treatment Providers' Opinions

Plaintiff faults the ALJ for giving "little weight" to Plaintiff's mental health records from CWCMH and Yakima Neighborhood Health Services (YNHS), which included medical opinions by mental health treatment providers.  ECF No. 25 at 5, 12 (citing Tr. 26).

Plaintiff alleges that the ALJ improperly characterized extensive treatment records as "opinions" that are not entitled to weight.  ECF No. 21 at 5-15 (citing Tr. 25-26).  Plaintiff is partially correct.  The cited records include, but are not limited to, what is commonly thought of as opinions.  For example, Ms. Spitler diagnosed major depression and opined that she did not see clear symptoms of

PTSD. Tr. 547-48. This reflects her "opinion" of Plaintiff's diagnoses. While the ALJ was not required to accept these diagnoses because, as noted, Ms. Spitler is not an acceptable diagnosing source,[3] there are other opinions in these records that are largely unaddressed by the ALJ.

With respect to Plaintiff's treatment records, including mental health providers' opinions, from Central Washington Comprehensive Mental Health (CWCMH), the ALJ noted:

> The record also contains notes from [CWCMH] for March 2012 through December 2012. The claimant was seen for her continuing problems with substance abuse and depression. The records are repetitious and do not appear to be from acceptable medical sources. 20 C.F.R. § 416.913(a). I give little weight to these records (Exhibits 14F, 18F-20F).

Tr. 25-26.

This is the extent of the ALJ's analysis of the treatment records, including Plaintiff's treatment providers' opinions, from CWCMH.

_____

[3] Plaintiff contends that treatment records need not be from "acceptable medical sources." ECF No. 25 at 12. This is correct. However, Plaintiff's contention fails to recognize that the ALJ is required to weigh evidence, such as a diagnosis, from treating sources differently depending upon the type of medical source making the diagnosis. Only "acceptable medical sources" may make a diagnosis. 20 C.F.R. §§ 404.1513(a), 416.913(a); S.S.R. 06-03p.

1    As an initial matter, those who provided the majority of Plaintiff's treatment

2 at CWCMH are categorized as medical sources who are not "acceptable medical

3 sources."  SSR 06-03p, 2006 WL 2329939 at *2.[4]  Instead, they constitute "other

4 sources."  *Molina*, 674 F.3d at 1111.  While the ALJ may discount the opinions of

5 "other sources" by providing germane reasons for doing so, *id.*, the Social Security

6 Regulations emphasize the importance of evaluating these opinions on "key issues

7 such as impairment severity and functional effects."  SSR 06-03p, 2006 WL

8 2329939 at *3.  Such "other source" opinions can be evaluated based on (1) how

9 long the source has known and how frequently the source has seen the individual,

10 (2) how consistent the opinion is with other evidence, (3) the degree to which the

11 source presents relevant evidence to support an opinion, (4) how well the source

12 _____

13 [4] These included, in part, evaluating and treating sources Debbi Spitler, PAC (Tr.

14 542-48); Emily Shoemaker, LMFT (Tr. 545-56, 621-22, 636, 705-06, 721-22);

15 Russell Anderson, LCSW, and Deborah Blaine, M.S. (Tr. 549-53); Marc

16 Shellenberger, B.S. (Tr. 603-06, 618, 629-30, 632, 635, 660-61); Kristal Boyer,

17 and Deborah Blaine, M.S. (Tr. 607-08, 612-14); William Brashear, B.A. (Tr. 615-

18 17, 628, 631, 633-34, 643-44).  Medication management provider Shane Anderson,

19 Pharm. D., however, is an acceptable medical source.  (Tr. 623-27, 639-42, 662-64,

20 686-90, 734-38, 755-58, 780-84, 793-94).

1   explains the opinion, and (5) whether the source has a specialty or area of expertise

2   related to the individual's impairment. *Id*. at *4.

3        Where an ALJ does not explicitly reject a medical opinion, she errs.

4   *Garrison*, 759 F.3d at 1012.  To reject the opinion of such "other sources," the ALJ

5   must identify germane reasons.  *Molina*, 674 F.3d at 1108.  Importantly, the Court

6   is constrained to review the reasons the ALJ asserts.  *Connett v. Barnhart*, 340

7   F.3d 871, 874 (9th Cir. 2003) (it was "error for the district court to affirm the ALJ

8   based on evidence that the ALJ did not discuss") (citations omitted).

9        The ALJ erred when she failed to provide germane reasons for discounting

10  the "other source" medical opinions from Plaintiff's mental health treatment

11  providers at CWCMH and Yakima Neighborhood Health Services (YNHS).

12  Moreover, with respect to YNHS, the ALJ failed to consider the May 2012 opinion

13  of Plaintiff's primary care physician, Phillip Dove, M.D., an acceptable medical

14  source, that Plaintiff "has the symptoms of a major depressive episode."  (Tr. 880).

15  Although Dr. Dove did not attribute specific work-related limitations to these

16  symptoms, the ALJ was nonetheless required to consider all relevant evidence,

17  particularly the opinions of Plaintiff's primary care physician.  *See Lester*, 81 F.3d

18  at 832-33 ("The Commissioner is required to give weight not only to the treating

19  physician's clinical findings and interpretation of test results, but also to his

20

1    subjective judgments.") (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

2    1988).  This Court cannot conclude that these errors were harmless.

3        First, this evidence, if credited, may have affected the ultimate non-disability

4    finding.  For instance, the ALJ correctly noted that, at a March 2012 evaluation by

5    Debbi Spitler, PAC, at CWCMH, Plaintiff was seen for "her continuing problems

6    with substance abuse and depression."  Tr. 25-26 (citing Tr. 542).  While noting

7    Ms. Spitler's reference to Plaintiff's continuing problems with depression, and

8    having found at step two that Plaintiff suffers from severe impairments that include

9    depression (Tr. 21), the ALJ then ignored the bulk of the mental health treatment

10   records at CWCMH.

11       It was error for the ALJ to find Plaintiff suffers from the severe impairment

12   of depression and at the same time fail to provide germane reasons for rejecting the

13   other source opinions with respect to Plaintiff's treatment for the severe

14   impairment of depression.  The ALJ's step two finding clearly made Plaintiff's

15   treatment for depression, and resulting opinions, even with "other sources,"

16   relevant evidence requiring analysis.  Moreover, the ALJ erred when she failed to

17   properly address the opinion of acceptable medical source Dr. Anderson, also with

18   respect to Plaintiff's depression.

19       Second, the ALJ did not indicate which opinion evidence from CWCMH she

20   was rejecting, nor why.  Simply referring to all of the evidence from this mental

1   health agency as from non-acceptable medical sources fails to provide a germane

2   reason for rejecting the opinion evidence; moreover, this reason is inapplicable to

3   Dr. Anderson since he is an acceptable source.

4          As noted, the ALJ also rejected these opinions as "repetitious," but this is

5   not a germane reason to discredit them.  For instance, Plaintiff's report that "I

6   never feel happy, I lash out, I have mood swings, I don't want to do anything, I

7   struggle to get out of bed sometimes," appears so many times in the CWCMH

8   records, s*ee, e.g.,* Tr. 721, 730, 732, 739, 741, 743-45, 747,792, that it could be

9   inferred providers are simply repeating it rather than reporting Plaintiff's current

10  state or statement of functioning.  However, this alone does not constitute a

11  germane reason to reject their opinions as it may in fact reflect providers' opinions

12  of Plaintiff's contemporaneous functioning.

13         Similarly, the ALJ failed to discuss the mental health records, again

14  including provider opinions, from Neighborhood Health.  *See, e.g*., Tr. 574 (Peggy

15  Davenport, MSCP, noted in December 2011 that Plaintiff "agrees to work harder at

16  CBT [cognitive behavioral therapy] and refocusing her thoughts to assist in dealing

17  with depressive thoughts."); Tr. 563 (in January 2012, Ms. Davenport noted that

18  Plaintiff "has the symptoms of a major depressive episode"); Tr. 880 (in May

19  2012, Dr. Dove reported that Plaintiff had the symptoms of a major depressive

20  episode).  Although the ALJ need not discuss every piece of evidence, *Howard,*

341 F.3d at 1012, when an ALJ does not specifically reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, she errs. *Garrison*, 759 F.3d at 1012.

Plaintiff contends the ALJ should have credited the July 2012 opinion of Shane Anderson, Pharm. D., that Plaintiff's anxiety was "through the roof" and, in August of 2012, that Plaintiff was experiencing a "downward spiral" with increasing symptoms.[5]  Significantly, however, Dr. Anderson further opined that Plaintiff's "depression appears to have begun after she connected her son's recent

---

[5] ECF No. 21 at 8 (citing Tr. 737, 780-83).  Plaintiff also cites diagnoses the ALJ should have credited.  ECF No. 21 at 7 (citing Tr. 546 (Spitler); Tr. 552 (Anderson, LCSW); 624 (Anderson, Pharm. D., medication management); Tr. 749 (Brashear, B.A.)).  The ALJ is not, however, required to credit a diagnosis because it does not in and of itself equate to a severe limitation.  *See, e.g., Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) ("a medical impairment is deemed severe . . . when alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities") (quotation and citations omitted).  However, on remand the ALJ is directed to readdress this with the medical opinion and other medical evidence.

1  crime to the thought that he may end up like her ex-husband, who is in prison."  Tr.

2  737.  The ALJ may not have been required to credit this opinion that Plaintiff's

3  symptoms increased, because Dr. Anderson opined that Plaintiff's symptoms likely

4  increased based on a specific event.  However, the ALJ also rejected Dr.

5  Anderson's opinion as an "other source" opinion.  Tr. 25-26.  Because Dr.

6  Anderson was in fact an acceptable source, this was not a specific, legitimate

7  reason.  On remand, Dr. Anderson's opinions should be readdressed.

8        Plaintiff further faults the ALJ for failing to credit several Global

9  Assessments of Functioning (GAFs).  ECF No. 21 at 7-8 (citing Tr. 546, 552, 689,

10  715 and 726).  However, the ALJ was not required to credit these scores because,

11  standing alone, they are not an acceptable measure of disability.  *Garrison*, 759

12  F.3d at n 4.[6]

13  _____

14  [6]Although clinicians use a GAF to rate the psychological, social, and occupational

15  functioning of a patient, the scale does not evaluate impairments caused by

16  psychological or environmental factors.  *See Morgan v. Commissioner of Soc. Sec.*

17  *Admin.,* 169 F.3d 595, 598 (9th Cir. 1999).  The Commissioner has explicitly

18  disavowed use of GAF scores as indicators of disability.  "The GAF scale . . . does

19  not have a direct correlation to the severity requirements in our mental disorder

20  listing."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).  Moreover, the GAF

1    In addition, the ALJ's improper rejection of opinion evidence leaves the

2    Court unable to review whether this evidence is or is not consistent with the record

3    as a whole.  As consistency with the record as a whole is a relevant factor when

4    evaluating any opinion, *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007), this is

5    another reason to readdress the opinion evidence on remand.

6         *2. Acceptable Mental Health Examining Source Opinions*

7              *a. Dr. Toews*

8         Next, Plaintiff challenges the weight the ALJ attributed to the opinion of

9    examining provider, Jay Toews, Ed.  Tr. 24-25 (citing Tr. 367-76).  Dr. Toews

10   performed a psychological evaluation of Plaintiff on September 28, 2011.  Tr. 367-

11   76.  Plaintiff's test results were essentially normal, including intact attention,

12   concentration, and memory.  Tr. 24-25 (citing Tr. 371).  In addition, Dr. Toews

13   noted that psychological testing revealed "no indication of cognitive, mood or

14   affective disorders that would preclude working."  Tr. 24 (citing Tr. 371).

15   Moreover, Dr. Toews indicated that memory testing results were reportedly

16   "consistent with low motivation and effort rather than an indication of true

17   memory deficits."  Tr. 25 (citing Tr. 371).  Dr. Toews additionally opined that

18

19   scale is no longer included in the DSM–V.  The ALJ was not required to credit

20   these assessments as accurate indicators of Plaintiff's disability.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

Plaintiff has no work-related limitations.  The ALJ gave Dr. Toews' opinion substantial weight.  Tr. 24-25.  Because the ALJ erred by improperly rejecting much of the medical evidence, on remand the ALJ should readdress Dr. Toews' opinion.

### b. Dr. Kouzes

Jan Kouzes, Ed., performed a psychological evaluation of Plaintiff in January 2012.  Tr. 509-12.  Dr. Kouzes observed symptoms of depression and anger, and diagnosed bipolar disorder, post-traumatic stress disorder, and borderline personality disorder.  Tr. 509.  Dr. Kouzes further opined that Plaintiff's prognosis was guarded.  Tr.  511.  The ALJ gave Dr. Kouzes' opinion little weight.  Tr. 25.  The ALJ is incorrect that Dr. Kouzes opined Plaintiff's physical impairments, in addition to her mental impairments, render Plaintiff disabled, Tr. 25 (citing Tr. 513), because the opinion the ALJ cited is that of  Melanie Mitchell, Psy.D., of the Department of Social and Health Services, not Dr. Kouzes.  Tr. 513.  Because it appears that the ALJ misread the record, the ALJ's reason is not supported by substantial evidence.  On remand, the ALJ will readdress the opinions of Dr. Toews, Dr. Kouzes, and Dr. Mitchell.

### 3. Medical Record as a Whole

While the ALJ rejected the medical opinions contained in mental health records, as noted, when the ALJ rejected these records she also rejected treatment

providers' observations and Plaintiff's statements.  In making a disability decision, the ALJ is required to consider all of the evidence in a claimant's case record.  20 C.F.R. § 416.920(a)(3).  "While the ALJ is not required to discuss every piece of evidence, he may not omit evidence that is significant or probative."  *Howard,* 341 F.3d at 1012.  A reviewing court may only find such omissions harmless where they are "inconsequential to the ultimate nondisability finding."  *Carmickle*, 533 F.3d at 1162.

As noted, the ALJ rejected mental health treatment records from CWCMH as "repetitious," but this is not a germane reason to reject them.  For instance, Plaintiff's report that "I never feel happy, I lash out, I have mood swings, I don't want to do anything, I struggle to get out of bed sometimes," appears so many times in the CWCMH records, s*ee, e.g.,* Tr. 721, 730, 732, 739, 741, 743-45, 747,792, that it could be inferred providers are simply repeating it rather than reporting Plaintiff's current state or statement of functioning.  However, this alone does not constitute even a germane reason as it may in fact reflect Plaintiff's contemporaneous functioning, which is probative evidence the ALJ was required to analyze.

As noted, the ALJ also failed to discuss most of the mental health records from Neighborhood Health.  As noted, in making a disability decision, the ALJ is required to consider all of the evidence in a claimant's case record, 20 C.F.R. §

416.920(a)(3), and, although the ALJ is not required to discuss every piece of evidence, he may not omit significant or probative evidence. *See Howard*, 341 F.3d at 1012. A reviewing court may only find such omissions harmless where they are inconsequential to the ultimate nondisability finding. *Carmickle,* 533 F.3d at 1162. Here, some of the records the ALJ failed to consider with respect to Plaintiff's severe impairment of depression appear consequential to the ultimate nondisability determination. *See, e.g.*, Tr. 574 (Peggy Davenport, MSCP, noted in December 2011 that Plaintiff "agrees to work harder at CBT [cognitive behavioral therapy] and refocusing her thoughts to assist in dealing with depressive thoughts."); Tr. 563 (in January 2012, Ms. Davenport noted that Plaintiff "has the symptoms of a major depressive episode"); Tr. 880 (in May 2012, Dr. Dove reported that Plaintiff had the symptoms of a major depressive episode). Again, as noted, although the ALJ is not required to discuss every piece of evidence, the ALJ may not omit evidence that is significant or probative. *Howard*, 341 F.3d at 1012. The evidence appears probative. On remand, this evidence should be addressed.

In sum, this Court finds the ALJ erred in her assessment of the medical evidence – namely, her evaluation of the opinions and records of Plaintiff's mental health providers at CWCMH and YNHS, and of examining psychologists Dr. Toews and Dr. Kouzes. Further, the Court does not find that these errors are harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (reiterating

1   that "a reviewing court cannot consider [an] error harmless unless it can

2   confidently conclude that no reasonable ALJ, when fully crediting the testimony,

3   could have reached a different disability determination.") (quoting *Stout v. Comm'r*

4   *of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

5   **C. Adverse Credibility Finding**

6       Next, Plaintiff faults the ALJ for failing to credit her symptom complaints.

7   ECF No. 25 at 27-31.

8       An ALJ engages in a two-step analysis to determine whether a claimant's

9   testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

10  determine whether there is objective medical evidence of an underlying

11  impairment which could reasonably be expected to produce the pain or other

12  symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

13  "The claimant is not required to show that [his] impairment could reasonably be

14  expected to cause the severity of the symptom [he] has alleged; [he] need only

15  show that it could reasonably have caused some degree of the symptom."  *Vasquez*

16  *v. Astrue*, 572 F. 3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

17      Second,"[i]f the claimant meets the first test and there is no evidence of

18  malingering, the ALJ can only reject the claimant's testimony about the severity of

19  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

20  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

1   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are

2   insufficient; rather, the ALJ must identify what testimony is not credible and what

3   evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at

4   834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must

5   make a credibility determination with findings sufficiently specific to permit the

6   court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

7   "The clear and convincing [evidence] standard is the most demanding required in

8   Social Security cases."  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of*

9   *Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

10          In making an adverse credibility determination, the ALJ may consider, *inter*

11  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

12  claimant's testimony or between his testimony and his conduct; (3) the claimant's

13  daily living activities; (4) the claimant's work record; and (5) testimony from

14  physicians or third parties concerning the nature, severity, and effect of the

15  claimant's condition.  *Thomas,* 278 F.3d at 958-59.

16          In discrediting Plaintiff's symptom claims, the ALJ found that the medical

17  record did not support the degree of physical or psychiatric limitation alleged by

18  Plaintiff.  Tr. 24-26.  Because the medical evidence was not properly evaluated, on

19  the remand the ALJ should also reconsider the credibility finding.  Whether a

20  proper evaluation of the medical opinions can be reconciled with the ALJ's

1  existing adverse credibility determination is for the Commissioner to decide in the

2  first instance.

3  **D. Remedy**

4          In the event of reversible error, the parties disagree as to the appropriate

5  remedy.  Plaintiff asks this Court to reverse for an immediate award of benefits.

6  ECF No. 25 at 31.  The Commissioner, on the other hand, asserts that the proper

7  remedy should be to remand for further proceedings.  ECF No. 32 at 15.

8          "When an ALJ's denial of benefits is based upon legal error or not supported

9  by the record, the proper course, except in rare circumstances, is to remand to the

10  agency for additional investigation or explanation."  *See Hill*, 698 F.3d at 1162

11  (internal quotation marks omitted).  "Remand for further proceedings is

12  appropriate where there are outstanding issues that must be resolved before a

13  determination can be made, and it is not clear from the record that the ALJ would

14  be required to find the claimant disabled if all the evidence were properly

15  evaluated."  *Id.*  The Ninth Circuit's "credit-as-true" rule, on the other hand, directs

16  that remand for an award of benefits is appropriate when

17          (1) the record has been fully developed and further administrative
            proceedings would serve no useful purpose; (2) the ALJ has failed to
18          provide legally sufficient reasons for rejecting evidence, whether claimant
            testimony or medical opinion; and (3) if the improperly discredited evidence
19          were credited as true, the ALJ would be required to find the claimant
            disabled on remand.

20

*Garrison,* 759 F.3d at 1020.  Even when all conditions of the credit-as-true rule are satisfied, a court is required to remand for further proceedings when an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Id.* at 1021.

Here, there are outstanding issues that must be resolved and it is unclear that Plaintiff would be found disabled if all the evidence were properly evaluated.  By failing to properly evaluate the medical opinion evidence, there are inconsistencies in the medical record that require resolution.  Whether, when the evidence in the record as a whole is properly evaluated, Plaintiff's physical and mental limitations impair her ability to perform basic work activities must yet be resolved.  On remand, in making this determination, the Commissioner must properly consider and evaluate all the medical evidence; reevaluate Plaintiff's impairments; reassess Plaintiff's credibility; determine Plaintiff's RFC; and, if necessary, determine Plaintiff's ability to perform work at steps four and five.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence or free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 25) is **GRANTED.**

2. Defendant's motion for summary judgment (ECF No. 32) is **DENIED.**

3.  Pursuant to sentence four of 42 U.S.C. § 405(g), this action is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

4. The District Court Executive is directed to file this Order, enter **JUDGMENT** for Plaintiff, provide copies to counsel, and **CLOSE** the file.

DATED this 24th day of March, 2017.


_S/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE